SOUTHWESTERN VENEER COMPANY v. DENNISON.

Opinion delivered June 27, 1927.

1. VENUE—RESIDENCE OF DEFENDANT FOR JURY WHEN.—The issue whether a defendant, residing in the county, had a personal interest in a suit and therefore was properly a party within Crawford & Moses' Dig., § 1164, allowing service of summons on defendants in other counties than that in which the action was first brought, if, at commencement, any defendant resided in the county, held for jury under conflicting testimony.

2. COMPROMISE AND SETTLEMENT—CONSIDERATION.—Settlement of a disputed claim by a compromise agreement is a sufficient consideration to support such agreement, even if the original agreement was without consideration.

3. EVIDENCE—PAROL EVIDENCE VARYING WRITTEN RELEASE.—An oral compromise agreement, with a partner as individual, held not necessarily contradictory of a written release signed by partners, where there was testimony that the release affected the partnership only.

4. FRAUDS, STATUTE OF—PART PERFORMANCE—ORAL CONTRACT FOR THE SALE OF LAND.—An oral agreement to pay consideration for the release of a contract for the purchase of timber lands, as the timber should be cut, held taken out of the statute of frauds by a partial performance of the payer and complete performance by the parties releasing the contract.

Appeal from Monroe Circuit Court; *George W. Clark,* Judge; affirmed.

*S. S. Jefferies* and *Ross Mathis,* for appellant.

*John W. Moncrief, Lee & Moore* and *Bogle & Sharp,* for appellee.

HUMPHREYS, J. This is a suit brought by appellee against appellants in the circuit court of Monroe County to recover an alleged interest amounting to $17,000, in the timber on a 5,300-acre tract of land in Monroe, Phillips and Arkansas counties, Arkansas, which J. T. Wylie conveyed to S. M. Bush, by deed dated January 15, 1924, acknowledged May 24, 1924, and filed for record July 14, 1924.

The gist of the complaint was that appellee and his two partners, J. M. Linder and F. M. Linder, released their agreement to purchase said tract of land from J. T.

Wylie upon the agreement of appellants that they would pay appellee $1 per thousand feet as the timber was cut and removed from the land; that, shortly after said deed was executed, logging operations were commenced upon said land, and that a total of 229,063 feet of logs was cut and removed and settlement made with appellee by said appellants at the rate of $1 per thousand feet, in accordance with said contract; that on or about the first day of September, 1925, there had been cut and removed from said lands by appellant 1,707,114 feet of logs; that, under the terms of said contract, there was due appellee the sum of $1,704, for which amount he requested settlement; that appellants claimed the amount they had agreed to pay appellee was excessive, and persuaded and induced him to accept the sum of fifty cents per thousand for the remainder of the timber, 38,000,000 feet, in lieu of $1 per thousand, the amount originally agreed upon; that one of the inducements offered was to employ appellee as general superintendent of the logging operations upon said lands at the rate of ten cents per thousand feet; that on said date they settled with appellee for the 1,704,114 feet which had been cut at fifty cents per thousand feet; that from the first day of September, 1925, up to the 17th day of January, 1926, 1,794,-975 feet of logs were cut and removed, for which appellants paid appellee fifty cents per thousand feet, under the contract for his interest in the timber, in addition to ten cents per thousand for his personal services as superintendent of logging operations; that at that time appellants terminated said contract, and, by reason of the breach, appellee has been damaged in the sum of $17,000, for which amount judgment was prayed.

S. M. Bush resided in Monroe County, where suit was brought, and he was served with summons. The Southwestern Veneer Company was an ordinary mercantile corporation, domiciled, with all of its offices, in the Southern District of Woodruff County, with no place of business, branch office, agent or officer in Monroe County. Summons was directed to the sheriff of Woodruff

County and served upon said company in the Southern District of Woodruff County. Appellant, the Southwestern Veneer Company, appeared specially and only for the purpose of objecting to the jurisdiction of the court, and moved that the summons served upon it be quashed upon the alleged ground that S. M. Bush had no interest in the controversy, but was joined in the suit in order that service might be had upon him in Monroe County as a basis for bringing the suit in said county, so as to serve a summons upon it in the Southern District of Woodruff County, under the provisions of § 1106 of Crawford & Moses' Digest. The court overruled the motion to quash the summons because it would necessitate a hearing of all the evidence in the case in order to determine whether S. M. Bush had a personal interest in the controversy, to which ruling of the court appellants objected and excepted.

Reserving their exceptions to the ruling of the court in refusing to quash the summons, at every step during the progress of the trial, appellants first filed an answer denying the material allegations of the complaint, and interposing the additional and further defenses of a release, and the statute of frauds. The cause was submitted, and, when the testimony was completed, appellants moved for an instructed verdict, both upon the ground that the court had no jurisdiction to try the cause and that appellant had failed by competent, substantial evidence to establish any liability against them. The cause was then sent to the jury, over the objection and exception of appellants, on the theory embodied in the following instruction:

"If the preponderance of the evidence shows that, prior to the first of September, 1925, there had been between plaintiff and defendants a controversy as to whether or not defendants had agreed to pay plaintiff a commission of $1 per thousand feet in connection with the purchase of the Wylie timber, and if, on or about September first, 1925, defendants or defendant Bush, compromised such dispute or controversy by agreeing to pay

plaintiff a commission of fifty cents per thousand feet on said timber in settlement of such controversy, such oral or verbal agreement would be valid, and your verdict will be for the plaintiff."

The jury returned a verdict in favor of appellee for $3,086.52, upon which judgment was rendered, from which is this appeal.

The undisputed testimony shows that J. T. Wylie owned 5,300 acres of heavily timbered land in Monroe, Arkansas and Phillips counties, in the State of Arkansas, with which S. B. Dennison was familiar. Dennison and his two partners, Linder Brothers, were conducting logging operations on White River, near this tract of land. In the summer of 1923 Dennison, for his partnership, began negotiations for the purchase of the land from J. T. Wylie, who asked him $45 an acre for it. Dennison and his associates did not have the cash to make the first payment, so they fell upon the plan of getting some manufacturing concern with money to buy the logs from them and advance the necessary cash payment on the purchase of the land. The Southwestern Veneer Company was operating at Clarendon, and could use the logs. J. W. Welsh was its president and S. M. Bush its manager. Pursuant to this plan, Dennison proposed to R. S. Easley, the logging superintendent, and S. M. Bush, the general manager, of the Southwestern Veneer Company, that Linder Brothers and Dennison would purchase the tract from Wylie and log the same if the Southwestern Veneer Company would buy the logs as cut and advance the cash payment required to purchase the land from Wylie. Bush accepted the proposition, and, on the strength of the agreement, a contract was prepared for the sale and purchase of the land by Wylie to Linder Brothers & Dennison, in which it was provided that the cash payment should be $100,000. In August, 1923, the parties met in Memphis to close up the deal, but failed to consummate it because the cash payment was too large. Dennison and Wylie continued their negotiations, and finally agreed upon terms, the sale and purchase calling

for only a $10,000 cash payment, the details of which were incorporated in a tentative deed from Wylie to Linder Brothers & Dennison. On the 23d of March, 1924, they met at the Chisca Hotel in Memphis to close up the deal in accordance with the terms set out in the tentative deed. Welsh objected to advancing the cash payment on account of the doubtful financial condition of Linder Brothers, and refused to do so unless they would get out of the deal. H. F. Linder became angry at the accusation that Linder Brothers were insolvent, and withdrew from the conference. Dennison, later in the day, on the 24th of March, 1924, at the suggestion of Bush, obtained the two following letters, one from the Southwestern Veneer Company and one from Wylie:

"Southwestern Veneer Company,
Cotton Plant, Arkansas.

"Gentlemen: We have agreed with Mr. J. T. Wylie of Saginaw, Michigan, for the purchase of certain lands in Monroe, Phillips and Arkansas counties, which we find we cannot handle, and hereby turn over to you to handle.

"Linder Brothers,
"By H. F. Linder,
"S. B. Dennison."

"Mr. J. T. Wylie,
Saginaw, Michigan.

"Dear sir: We agreed to purchase your timber land under contract, and called you here, but find we cannot make necessary arrangements for the money, so we will have to turn the deal down, releasing you to deal with any one you please, with no obligations to us.

"Linder Brothers,
"By H. F. Linder,
"S. B. Dennison."

Dennison also obtained the following letter to the Southwestern Veneer Company:

"March 25, 1924.

"Southwestern Veneer Company,
Cotton Plant, Arkansas.

"Gentlemen: We have for the last six months negotiated with Mr. J. T. Wylie, of Saginaw, Michigan, concerning the purchase by us from him of certain lands owned by him in Monroe, Phillips and Arkansas counties, Arkansas, known as the Bateman and Ezell lands.

"At our request Mr. Wylie came to Memphis this month for the purpose of closing up the trade, but, after he arrived here, we found we could not handle the deal, and we have therefore given Mr. Wylie a written waiver of any rights we had in the matter with him, and have authorized him to sell the property to others without any right, title or claim on our part.

"We understand you are now negotiating with Mr. Wylie for the purchase of these lands, and we hereby write this letter to you for the purpose of informing you that you are at liberty to make any trade you wish with Mr. Wylie, and that we shall not make any claim of any kind or character against you now or in the future in connection with any trade you may make with Mr. Wylie, or due to our failure to consummate trade with him.

"S. B. Dennison,
"Linder Brothers,
"J. M. Linder,
"H. F. Linder."

At this juncture in the history of the case the record reflects some dispute in the testimony.

Appellee testified that, before he obtained the first two letters from the partnership, S. M. Bush, on behalf of himself and the Southwestern Veneer Company, agreed to pay him $1 per thousand on all logs as they were cut and removed from the land. After appellants and Wylie began negotiations for the sale and purchase of the land which terminated in Wylie conveying same to

Bush on the 14th day of July, 1924, by deed embracing practically the same terms and conditions contained in the tentative deed which had been prepared for Wylie to execute to Linder Brothers & Dennison; that, on the day after he had delivered Bush the first two letters, he mailed a third letter, directing it to Brinkley, which his attorney had prepared because not satisfied that the first two letters sufficiently released any claim the partnership of Linder Brothers & Dennison had to purchase said lands from Wylie; that, several days after receiving the letter, he had an interview with Bush in Brinkley, at which time he asked Bush whether the release he wanted him to get, dated March 25, 1924, would in anywise affect their agreement for $1 a thousand on the logs when cut and removed, and, being informed that he (Bush) intended to have the deed made to him personally, and would see that he received $1 per thousand for the timber when cut and removed, he went to Memphis to prevail upon Linder Brothers to sign the release, and accomplished the purpose; that it began removing logs from the Wylie tract in December, 1924, and up to and including March 27, 1925, removed 229,063 feet, for which appellants settled with him at the rate of $1 per thousand in accordance with the contract made with him for procuring the release; that from June to September, 1925, they cut and removed about 1,700,000 feet of logs; that on September 21, 1925, witness went to Cotton Plant to see Bush and collect the amount due him under his contract, but Bush objected to settling with him on the basis of $1 per thousand, saying that the Wylie tract had over 35,000,000 or 36,000,000 feet more on it, and that $1 a thousand would amount to more than witness should have out of the deal; that they discussed the matter about half a day, at which time Bush proposed to pay him fifty cents a thousand on what had been cut and the remainder to be cut, and refused to pay more; that, not being financially able to litigate with appellants, witness compromised his agreement with them on that basis, and, pursuant to the compromise, received $851 or $852 for the amount

cut up to that date; that on that date appellants also entered into an agreement with witness to conduct their logging operations on said tract of land for ten cents per thousand feet; that it cut and hauled 1,974,000 feet between September 10, 1925, and January 17, 1926, for which settlement was made with him on a basis of sixty cents per thousand; that he continued to work for appellants until January 27, 1926, at which time he received a letter from Bush, discharging him; that thereafter he refused to pay him fifty cents per thousand according to the compromise agreement made on September 1, 1925, to witness' damage in the sum of $17,000.

S. M. Bush testified that, when Welsh refused to advance the cash payment, or to go into the deal on account of the doubtful financial condition of Linder Brothers, through witness' request and the efforts of Dennison, Linder Brothers & Dennison voluntarily released any claim they or either of them might have under their oral contract to purchase from Wylie, in order that the Southwestern Veneer Company might purchase the land directly from him; that he made no promise, either personally or for the Southwestern Veneer Company, to pay Dennison $1 per thousand feet as the timber was cut and removed, or any other sum, to obtain the release of Linder Brothers and himself; that he regarded Dennison's activity as a friendly act growing out of past business transactions and in anticipation on his part to secure employment when his company should begin to cut and haul the timber off of said tract of land; witness did not, for himself or his company, pay Dennison $1 a thousand for 229,063 feet of logs cut and removed up to March 27, 1925, nor enter into a compromise agreement to pay him fifty cents per thousand for the 1,700,000 feet cut and removed from that date until September, 1925, or promise to pay him fifty cents per thousand on the 35,000,000 or 36,000,000 feet to be cut in the future on the Wylie tract of land; that on September 1, 1925, he employed appellee, for the Southwestern Veneer Company, to superintend logging opera-

tions upon the Wylie tract, who was to furnish his own car and gasoline boat, and buy his own gasoline, for sixty cents a thousand as the logs were cut and removed; that on that date about 1,700,000 feet had been cut, and he directed his bookkeeper to allow Dennison $850 for the amount already cut because he, Dennison, had been very nice to them; that Dennison continued in their service until January 27, 1926, at which time he discharged him because he was not devoting his entire time to their logging operations on the Wylie tract of land; that everything he did in relation to the purchase of the Wylie tract of land and in the employment of appellee was for and on behalf of the Southwestern Veneer Company, which he represented in the capacity of manager, and was not on behalf of himself; that the deed from Wylie to the land was made to witness personally in order to avoid a showing on the record of a large indebtedness against his company; that the consideration paid and to be paid was $240,660, only $10,000 being paid in cash, leaving an indebtedness of $230,660, to be paid in large annual installments.

Other testimony appears in the record corroborating the testimony of Dennison and Bush, but it is unnecessary to a determination of the questions involved on this appeal to set out such testimony.

Appellants first contend for a reversal of the judgment because the court entertained jurisdiction of the cause. It is argued that, according to the undisputed testimony, S. M. Bush had no personal interest in the transaction and was improperly made a party in order that a summons might be served upon his codefendant, the Southwestern Veneer Company, in Woodruff County, under the provisions of § 1166 of Crawford & Moses' Digest, allowing service of summons upon all the defendants in a cause of action in other counties than that in which the action is brought, if, at its commencement, any of them resided in the county where it was brought. It was alleged in the complaint that S. M. Bush and the Southwestern Veneer Company breached a compromise

agreement entered into on September 1, 1925, to pay appellee fifty cents per thousand for the remainder of the timber cut and removed from the lands known as the Wylie tract, in lieu of an original contract to pay him $1 per thousand for the timber cut and removed from said lands, growing out of the sale and purchase of said lands by Wylie to appellants.

The evidence of appellee and his corroborating witnesses tended to support the allegations of the complaint, and, when considered in the light of the fact that S. M. Bush, individually, was the grantee in the deed, we cannot agree with appellants that the undisputed evidence showed that S. M. Bush had no personal interest in the transaction, and that he did not personally undertake to pay appellee fifty cents per thousand for the timber to be cut and removed off of said lands, in compromise of appellee's claim that he was entitled to an interest in said timber to the extent of $1 per thousand when same was cut and removed. The issue of whether he had any personal interest in the transaction was submitted to the jury, under disputed testimony, and found against appellants, and they are bound by the verdict. There being sufficient evidence to sustain the finding of the jury in this particular, the suit was properly brought in Monroe County, and appellee was properly summoned in Woodruff County.

Appellant's next contention for a reversal of the judgment is that, according to the undisputed testimony, there was no consideration to support the contract alleged to have been breached. The contract sued upon was an alleged compromise agreement to pay appellee fifty cents per thousand for all logs which had been cut and not paid for, and all logs which were to be cut after September 1, 1925, off of the Wylie tract of land, in lieu of and in settlement of the original contract entered into between appellants and appellee by which appellee was to receive $1 per thousand for his interest in the timber on said tract when removed, which he had acquired in getting the release from the partnership of Linder Broth-

ers & Dennison. We think the settlement of the disputed claim was sufficient consideration to support the compromise agreement sued upon, and that the testimony of appellee and his corroborating witnesses tended to show both an original and a compromise agreement. It is immaterial whether the original agreement was supported by a sufficient consideration if the agreement which was compromised was in good faith and was not prohibited by law. Appellants argue, however, that, if the original and compromise agreements were made, they were oral and in contradiction of the written release, and for that reason not provable. The oral contracts are not in contradiction of the written releases, if appellee's testimony was true relative to the construction placed upon them by S. M. Bush when he requested appellee to get them. Appellee testified that Bush told him that the contracts only released the partnership contractual rights of Linder Brothers & Dennison to purchase the lands from Wylie, and would not interfere with their agreement to pay him individually $1 per thousand for logs when they removed them from the lands, which agreement was afterwards modified so as to pay fifty cents per thousand for the logs in lieu of $1 per thousand. We think the testimony admissible, and, if true, was made as an inducement and in consideration of obtaining the partnership release to purchase the timber from Wylie. The record reflects that Wylie was not willing to sell the lands to appellants without such a release. Appellants argue that, if made, the contracts were oral, and for that reason were void under the statute of frauds. The contracts, if made, were taken out of the statute of frauds by partial performance. They had been entirely performed by appellee and partially performed by appellants.

No error appearing, the judgment is affirmed.